IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALFRED T. GIULIANO, as Liquidation Trustee for RIH ACQUISITIONS NJ, LLC, d/b/a THE ATLANTIC CLUB CASINO HOTEL; RANCHO'S CLUB CASINO, INC., d/b/a MAGNOLIA HOUSE CASINO, on behalf of itself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SCIENTIFIC GAMES CORPORATION; BALLY TECHNOLOGIES, INC., d/b/a SHFL ENTERTAINMENT or SHUFFLE MASTER; BALLY GAMING, INC., d/b/a BALLY TECHNOLOGIES, <br>           Defendants. | No. 20-cv-05262 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Alfred Giuliano, as liquidation trustee for RIH Acquisitions NJ, LLC, and Rancho's Club Casino, Inc. allege that Defendants Scientific Games Corporation, Bally Technologies, Inc., and Bally Gaming, Inc. engaged in an intricate fraudulent scheme to obtain patents and then enforce those patents to prevent competition in the market for automatic card shufflers. Plaintiffs raise a complicated set of facts and law alleging that Defendants engaged in unlawful and remediable behavior. But the Court does not engage today with the substance of Plaintiffs' claims; rather, the focus must be placed on the relatively narrow issue of whether to compel arbitration.

After reviewing the relevant contracts and their binding arbitration clauses, the Court, for the reasons that follow, agrees with Defendants that arbitration is required. Accordingly, the motion to compel arbitration is granted. In view of this resolution, Defendants' motion to dismiss, as well as Plaintiffs' motion to appoint interim class counsel, are denied without prejudice; and the case is stayed pending resolution of the arbitration.

**I. BACKGROUND**

Plaintiffs are two owners and operators of casinos in New Jersey and California. (Dkt. 23 ¶¶ 11–12.) Defendants are manufacturers, sellers, and lessors of equipment and games for casinos located in the United States. (*Id.* ¶¶ 13–22.) At issue in this case are Defendants' allegedly anticompetitive business practices with respect to automatic card shuffling machines.

According to the Complaint, Defendants unlawfully monopolized the market for automatic card shufflers in the United States, in violation of sections 2 and 3 of the Sherman Antitrust Act of 1890, by fraudulently obtaining patents and then enforcing those patents to prevent competition. (*See id.*) In doing so, Defendants now control almost 100% of the market for automated card shufflers in the United States. (*Id.* ¶ 3.) Casinos and card clubs use automated card shufflers to shuffle card decks reliably and randomly, to ensure fairness, and to improve game speed and profitability. (*Id.* ¶ 4.) Plaintiffs allege that Defendants have abused their monopoly power at the expense of direct customers, like Plaintiffs, for which card shufflers play

2

an important role. (*Id.* ¶¶ 4–5.) Some jurisdictions even ban hand shuffling, rendering the automatic shufflers a necessity. (*Id.*)

In 2010 and 2012, RIH Acquisitions NJ, LLC entered into two agreements with Shuffle Master, Inc., Defendant Scientific Games' predecessor in interest, to lease automatic card shufflers. (*See* Dkt. 27-1; Dkt. 27-2.) Those agreements (submitted in redacted form) include provisions requiring the contracting parties to arbitrate all claims related to RIH's lease of the automatic shufflers. (Dkt. 27-1 at 5; Dkt. 27-2 at 6; [1] Dkt. 35-1; Dkt. 35-2.) [2] Those agreements concern leases for several shuffle machines leased by RIH Acquisitions NJ, LLC from ShuffleMaster. (Dkt. 27-1; Dkt. 27-2.) And those agreements each contain clauses requiring arbitration of any dispute that arises from the contracts. (Dkt. 27-1 at 5; Dkt. 27-2 at 6.)

Plaintiffs filed this suit in September 2020 and alleged a variety of claims relating to the alleged scheme by Defendants. (Dkt. 1.) In their Amended (and operative) Complaint, Plaintiffs allege Defendants violated the Sherman Act by fraudulently obtaining patents and engaging in sham litigation and using monopoly power to overcharge customers for leases and purchases. (Dkt. 23 ¶¶ 11, 65, 101.)

Pending before the Court are Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 24), Defendants' Motion to Compel arbitration (Dkt. 26), and Plaintiffs' Motion to Appoint Interim Class Counsel (Dkt. 62).

---

[1] Page references to the lease agreements are to the PDF page numbers.

[2] Plaintiffs contend that Defendants failed to properly authenticate the arbitration agreements. (Dkt. 30 at 10.) But Plaintiffs do not challenge the authenticity of the agreements. (Id.) The authentication issue is discussed below.

## II. STANDARD OF REVIEW

The Federal Arbitration Act "reflects 'both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract.'" *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 740 (7th Cir. 2010) (quoting 9 U.S.C. § 2). A court should grant a motion to compel arbitration where there is: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4).

Generally, the "judiciary rather than an arbitrator decides whether a contract came into being." *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001). That reflects the basic precept that arbitration "is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sci., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). When deciding whether to enforce an agreement to arbitrate or interpret an arbitration clause, a court must "give effect to the contractual rights and expectations of the parties." *Id.* at 682 (internal quotation omitted). Accordingly, as

4

with any other contract, the parties' intent controls. *Sphere*, 256 F.3d at 591 ("[A]s arbitration depends on a valid contract[,] an argument that the contract does not exist can't logically be resolved by the arbitrator.").

A party that seeks to compel arbitration bears the burden to show an agreement to arbitrate. 9 U.S.C. § 4; *see A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). Once that party has shown such an agreement, the party resisting arbitration bears the burden of identifying a triable issue of fact as to whether the parties entered into an agreement in the first place. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The resisting party's evidentiary burden is like that of a party opposing summary judgment. *Id.* A party cannot avoid arbitration by denying the facts on "which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* (citation omitted). As with summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws reasonable inferences in its favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." *Id.* (quoting 9 U.S.C. § 4).

When the "parties to a dispute litigable in federal court have a written agreement to arbitrate their dispute, either of the parties is entitled to stay the trial of the action until the arbitration is complete." *Davis v. Fenton*, 857 F.3d 961, 962 (7th Cir. 2017) (citing 9 U.S.C. § 3). When a court grants a section 3 stay pending arbitration under the FAA, "it retains jurisdiction over a matter so that it can

5

effectuate the decision of an arbitrator or handle additional matters or claims that were not subject to arbitration." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011).

### III. DISCUSSION

A federal court determining "whether a contract's arbitration clause applies to a given dispute [applies] state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citing *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002)). Once it is clear that the parties entered into an agreement to arbitrate certain issues, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Id.* (citing *Moses H. Cone*, 460 U.S. at 24–25). Thus a court "may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

Plaintiffs contend that the relevant contract requires the Court to apply New Jersey law, and Plaintiffs and Defendants together briefed both New Jersey and Seventh Circuit law. (*See, e.g.*, Dkt. 30 at 3; Dkt. 33 at 7.) For the purposes of addressing this motion, the Court assumes, without deciding, that the contracts require the application of New Jersey law to determine whether the contracts'

6

arbitration clauses govern this dispute.³ But the laws of New Jersey and Illinois do not differ on whether this dispute is arbitrable. Accordingly, and because the parties briefed both New Jersey and Illinois/Seventh Circuit precedents, the Court will cite Illinois/Seventh Circuit decisions except when New Jersey law meaningfully differs. *See K.F.C. v. Snap, Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (applying Illinois law when the parties agreed "the two bodies of [potentially applicable] law are materially identical"); *Cervantes v. Bridgestone Retail Operations, LLC*, 2020 WL 7480700, at *3 (N.D. Ill. Dec. 18, 2020) (applying Illinois law when the choice of law "d[id] not impact the outcome in th[e] case").

A court must compel arbitration where (1) a valid, enforceable agreement to arbitrate exists and (2) the claims at issue fall within the scope of that agreement. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). To authenticate an arbitration agreement, the proponent must clear a bar that "is not high." *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015). In determining authenticity, "which requires evidence sufficient to support a finding that the matter in question is what its proponent claims," the Court applies Rule 901(a) of the Federal Rules of Evidence. *Id.* (quoting *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001)). District courts routinely consider agreements containing arbitration provisions "if the proponent of arbitration properly

---

³ Neither Plaintiffs nor Defendants believe that the choice of either New Jersey or Seventh Circuit law is outcome-determinative; both think that they win under the laws of both jurisdictions, and for the same reasons. (*See generally* Dkt. 27; Dkt. 29.) In the end, the Court agrees with the parties that the laws of both jurisdictions do not meaningfully differ on the issues relevant to this motion to compel.

7

authenticates the document containing an arbitration provision through an affidavit or otherwise." *Id.* (collecting cases).

Plaintiffs contend that, despite the low bar, Defendants failed to sufficiently authenticate the contracts. (Dkt. 30 at 6–7.) Even if the contracts attached to the Motion to Compel alone were insufficient under Rule 901(a) of the Federal Rules of Evidence, Defendants' affidavit authenticating the documents cures Plaintiffs' objections. (*See* Dkt. 33-1.) Notably, Plaintiffs do *not* contest the agreements' authenticity itself. (Dkt. 33 at 2; *see* Dkt. 30 at 6–7.) Plaintiffs nonetheless point to *Pearson v. United Debt Holdings, LLC,* in which a judge in this District denied a motion to compel arbitration because the judge found insufficient evidence in support of arbitration. 123 F. Supp. 3d at 1073–74. In reaching its holding, *Pearson* relied on the lack of any authenticating affidavit, a lack of signed documents, a lack of witnesses supporting an agreement, and a lack of argument that the agreement at issue was self-authenticating. *Id.*

*Pearson* does not require the Court to deny Defendants' motion to compel. Unlike in *Pearson*, the record here contains an affidavit by someone who witnessed the signing of the agreements, a copy of the signed agreements, the agreements' full arbitration clauses, and a self-authenticating contract. (Dkt. 33-1; Dkt. 35-1; Dkt. 35-2); *see Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 779 (7th Cir. 2006) (explaining the not "particularly high hurdle" of authentication under Rule 901(a) of the Federal Rules of Evidence (quotation omitted)). Those materials sufficiently demonstrate the

8

existence and authenticity of the agreements, which, of course, include arbitration clauses.

Both sides focus much of their briefing on whether an applicable agreement to arbitrate exists; to compel arbitration, however, an agreement also must be valid. To the extent Plaintiffs may later claim that they also wish to challenge the validity of the agreement, the Seventh Circuit has held that "a challenge to the validity (as opposed to the existence) of a contract [as a whole] always goes to the arbitrator, no matter how [state law] characterize[s] their views about enforceability." *K.F.C.*, 29 F.4th at 838.

As Defendants have shown that valid, enforceable agreements to arbitrate exist,[4] Plaintiffs next contend that none of their claims fall within the scope of the arbitration provisions. (Dkt. 30 at 10–12); *see Shearson/Am. Express, Inc.*, 482 U.S. at 226; *Zurich Am. Ins. Co.*, 417 F.3d at 687. Plaintiffs rely on the Supreme Court of New Jersey's refusal to compel arbitration of "statutory claims that are expressly intended by statute to proceed in court." (Dkt. 30 at 11 (citing *Garfinkel v. Morristown*

---

[4] Plaintiffs, citing to New Jersey law, contend that the contracts' anti-assignment clauses preclude Defendants from enforcing the contracts. (*See* Dkt. 30 at 7–10.) Plaintiffs' argument is that Defendants, as non-signatories, cannot enforce the agreements. (*See id.*) One of the cases that Plaintiffs cite, however, illustrates that a corporate merger like the one at issue in this case obviates these concerns. *See Med. Transcription Billing, Corp. v. Randolph Pain Relief & Wellness Ctr., PC*, 2019 WL 1785321, at *6 (N.J. Super. Ct. App. Div. Apr. 23, 2019). In *Randolph*, the Superior Court of New Jersey, Appellate Division, reversed the trial court for mistakenly allowing a successor-in-interest to assume liability on the basis that a "de facto merger" transferring rights occurred. *Id.* But the New Jersey court's decision rested on the understanding that an *actual* merger would allow the successor to continue. *Id.* at *7; *see also* N.J. Rev. Stat. § 14A:10-6(c) (explaining the impact of mergers on legal rights); *Pro. Buyer's Guild, LLC v. Ace Fire Underwriter Ins. Co.*, 2007 WL 3227183, at *3 (D.N.J. Oct. 30, 2007) (a merger or acquisition does not violate a "no assignment" clause under New Jersey law). Defendant Scientific Games is the actual (not merely de facto) merged successor entity and thus assumes the legal rights and obligations of its predecessor.

9

*Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 130 (2001)).) Plaintiffs seek to apply that state-law generalization to the specifics of this case by interpreting *Garfinkel v. Morristown Obstetrics & Gynecology Associates* to preclude arbitration of antitrust claims brought under the "Sherman or Clayton Acts." (*Id.*)

*Garfinkel* supports Plaintiffs' argument. Indeed, the Third Circuit persuasively read a different gloss onto *Garfinkel*, holding that it and related decisions apply in a narrower category of cases—most often employment. *See In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 525−26 (3d Cir. 2019). *Remicade* found that the antitrust claims were arbitrable under New Jersey law because, as here, the antitrust claims at issue were implicated by the relevant contracts that contained arbitration provisions. *Id.* at 525–526.

*Remicade* also considered and rejected a similar argument to the one Plaintiffs present—namely, that New Jersey law precluded bringing antitrust claims in arbitration. *Id.* As the court explained, when two parties are "highly sophisticated" and enter a "commercial contract," the parties may agree to arbitrate. *Id.* at 526. And when such an arbitration agreement applies to claims such as those at issue here, "they must be arbitrated." *Id.* at 527. As explained above, Trustee Giuliano, through RIH's signing of the contracts in question, agreed to arbitrate all claims arising from the leases of automatic card shufflers. Accordingly, all of Giuliano's claims are properly within the scope of the agreement between his predecessor corporation and Defendants' arbitration agreements. *Gore*, 666 F.3d at 1032.

10

Based on the foregoing, the Court finds that contracts exist that contain enforceable arbitration clauses. To the extent the parties disagree over the validity or enforceability of the arbitration agreements, the arbitrator may determine the scope of the issues present in the arbitration. *K.F.C.*, 2022 WL 871996, at *2 (7th Cir. Mar. 24, 2022); *see Am. Postal Workers Union, AFL-CIO, Milwaukee Loc. v. Runyon*, 185 F.3d 832, 835 (7th Cir. 1999); *see also Ross Bros. Const. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 875 (7th Cir. 2002) ("The general rule is that [o]nce it has been determined that a substantive dispute is arbitrable, the arbitrators normally have the authority to decide all matters necessary to dispose of the claim." (internal citation omitted)). Accordingly, the Court grants the Motion to Compel arbitration.[5]

## IV. CONCLUSION

Defendants' Motion to Compel Arbitration (Dkt. 26) is granted. Defendants' Motion to Dismiss (Dkt. 24) is denied without prejudice. Plaintiffs' Motion to Certify Interim Class Counsel (Dkt. 62) is also denied without prejudice. The case is stayed pending the result of the arbitration. *See Volkswagen of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007). The Parties are instructed to file a Joint Status Report within 14 days of the conclusion of the arbitration.

SO ORDERED in No. 20-cv-05262.

Date: May 19, 2022

JOHN F. KNESS
United States District Judge

---

[5] Also pending before the Court are Defendants' Motion to Dismiss and Plaintiffs' Motion to Appoint Interim Class Counsel. Those motions are denied without prejudice, with leave to refile should the arbitrator decide that any remaining claims are not arbitrable. *See Chopper Trading LLC v. Allston Trading LLC*, 2021 WL 3709188, at *1 (N.D. Ill. Aug. 20, 2021).